Nancy Barbara POULSEN (Wenzler), Plaintiff and Respondent,

v.

John Elden POULSEN, Mechanical Installation, Inc., a Utah corporation, and Barr Development, Inc., a Utah corporation, Defendants and Appellants.

No. 17957.

Supreme Court of Utah.

Oct. 21, 1983.

John C. Green, Salt Lake City, for defendants and appellants.

McCoy A. McMurray, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

This is an action brought by the plaintiff Nancy Poulsen to quiet title to certain property located in Summit County, Utah. The

trial court quieted title in her name and we affirm.

On January 3, 1965, the plaintiff married the defendant John Poulsen. She had two children from a prior marriage and one child from her marriage to John. On January 16, 1975, the defendant filed for divorce. After negotiation, the parties reached a settlement agreement. In addition, the parties entered into two separate, unwritten "side" agreements. First, the parties agreed that the defendant would assist the plaintiff financially by paying her $200 per month, essentially as support for the three children. These payments were subject to four conditions, namely, they would continue: (1) as long as John was financially capable of making the payments, (2) until the children reached majority, (3) until Nancy obtained suitable employment sufficient to support herself and the children, or (4) until Nancy remarried. Second, in a separate agreement, John agreed to convey to Nancy his interest in two lots located in Summit County, which they held as joint tenants, with the understanding that she would reconvey ownership at a subsequent date. The reason for this latter agreement was that John was undergoing severe financial difficulties and feared the possibility of losing the two lots to his creditors. Thus, on April 22, 1975, Nancy was awarded the property in the Decree of Divorce pursuant to the parties' written stipulation. No information about the "side" agreements was provided to the court in the divorce proceedings.

Early in 1977, the defendant stopped making the monthly payments of $200. The plaintiff suggested to the defendant that she convey the property to him, that he borrow against it, and pay her a lump sum child support/alimony payment. The purpose of this suggestion was to allow the plaintiff to purchase a condominium or a home for herself and her children. At that time, the defendant informed her that she had already conveyed the property to him by a quitclaim deed dated May 30, 1975, and recorded on February 26, 1976.

On August 2, 1977, the plaintiff filed suit to quiet title to the two lots. In her complaint, she denied execution of the quitclaim deed and, in the alternative, contended that, if the quitclaim deed did bear her signature, it was obtained by John through fraud, device or artifice.

At trial, in May of 1981, it was proven by expert testimony that the quitclaim deed did in fact bear Nancy's signature. The expert testimony also established that both the date above the signature and the typed version of the plaintiff's name below her signature had been typed on the deed subsequent to the signing of the deed. In addition, the testimony of John's present wife, who notarized the quitclaim deed, was very ambiguous as to whether Nancy's signature was notarized by her contemporaneously with Nancy's signature or sometime afterwards. Nancy testified she never appeared before the new wife to have her signature on the deed notarized. Furthermore, it was established by John's own admission that he gave no consideration for Nancy's signing of the quitclaim deed and conveying of the property to him. At the conclusion of the trial, Nancy moved the trial court for leave to amend the pleadings to conform to the evidence to include the theories of "no delivery" and "lack of consideration." The trial court denied Nancy's motion. However, the trial court quieted title to the two lots in Nancy based on its written Findings of Fact that John presented no evidence regarding delivery of the deed or the giving of any consideration therefor.

■ The defendant's main contention on appeal is that the trial court erred in entering a judgment based on no delivery and lack of consideration because those issues were not pled or specifically raised at trial. In addition, John argues that the trial court erred in failing to award him his costs and attorney fees incurred in proving the genuineness of Nancy's signature on the quitclaim deed.

Rule 15(b) of the Utah Rules of Civil Procedure reads as follows:

Amendments to Conform to the Evidence.—■ When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. [2] If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall grant a continuance, if necessary, to enable the objecting party to meet such evidence.

(Numbering added.) Our analysis regarding the proper application of Rule 15(b) focuses on whether the facts of the case fall within the first or second part of the rule. *See General Insurance Company of America v. Carnicero Dynasty Corp.,* Utah, 545 P.2d 502 (1976). *See also First Security Bank of Utah v. Colonial Ford, Inc.,* Utah, 597 P.2d 859 (1979). *See generally,* 3 J. Moore, *Moore's Federal Practice* ¶ 15.13[2], at 15–157 to 15–180 (2d ed. 1983 & Supp.1982–83); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1493, at 460–74 (1971 & Supp.1982). The present case falls within the first part of Rule 15(b), which makes it mandatory for the trial court to grant leave to amend the party's pleadings to conform to the evidence. *See General Insurance Company of America, supra.* The trial court's denial of Nancy's motion was therefore error and the issue may be raised sua sponte by this Court. In any event, the "failure to so amend does not affect the result of the trial of these issues." Utah R.Civ.P. 15(b). The issues were therefore properly before the trial court because they were tried by the express or implied consent of the parties.

■ The question now presented is whether the trial court properly found no delivery and lack of consideration. John argues that the trial court erred in finding no delivery because it ignored the presumption of delivery that arises by a duly executed and acknowledged deed that has been recorded. The rule set forth by John regarding a presumption of delivery is correct. *See, e.g., Chamberlain v. Larsen,* 83 Utah 420, 29 P.2d 355 (1934). However, it is inapplicable to the present case because the quitclaim deed was not "duly" acknowledged. Expert testimony at trial established that both the date above Nancy's signature and the typed version of her name below her signature were typed on after Nancy signed the deed. In addition, there was evidence from which the trial court could legitimately infer that Nancy's signature was not contemporaneously notarized and that Nancy in fact never appeared before the notary who purported to take her acknowledgment. While it is true that a signature need not be notarized at the time it is executed in order for the notarization to be valid, in this case the evidence that the notarization was placed on the document at a different time from the signature tends to corroborate Nancy's testimony that she never appeared before the notary at all. Thus, the presumption of delivery was not controlling in this case because the trial court could properly find that Nancy's signature was not acknowledged.

■ John also argues that Nancy had the burden of proof regarding no delivery and that she failed to meet it. It is well established that delivery, or the absence thereof, is a question of fact. *See Anderson v. Johnson,* 1 Utah 2d 400, 268 P.2d 427 (1954). *See also Henry v. Latta,* Colo.App., 472 P.2d 694 (1970); *Yunghans v. O'Toole,* 224 Kan. 553, 581 P.2d 393 (1978); *Suburban Properties, Inc. v. Hanson,* 234 Or. 356, 382 P.2d 90 (1963). The standard of review applicable to questions of fact is as follows:

On review, this Court is obliged to view the evidence and all inferences that may be drawn therefrom in a light most supportive of the findings of the trier of fact. The findings and judgment of the trial court will not be disturbed when they are based on substantial, competent, admissible evidence.

*Nupetco Associates v. Jenkins,* Utah, 669 P.2d 877 at 881 (1983) (quoting *Car Doctor, Inc. v. Belmont,* Utah, 635 P.2d 82, 83–84 (1981)).

■ The evidence presented by John was that he, his wife, and his brother were present when Nancy signed the deed and purportedly left it with John. However, the testimony of John's brother was that he did not know whether Nancy signed a "deed," but only that she signed some piece of paper. John's wife's testimony was extremely vague as to exactly when she notarized the deed and yet she was quite sure that she was present when Nancy executed it. Nancy, on the other hand, testified that she had no recollection of signing the deed or of delivering it to John. Nancy suggested the explanation that her signature had been obtained on the deed by mixing it in with several other divorce papers that John requested she sign. Moreover, Nancy testified adamantly that she never signed any papers in the presence of John's wife, whose notarization is on the quitclaim deed. Based on the above disputed evidence, we believe that the trial court was free to find that, even though Nancy's signature was on the deed, she never delivered the deed to John. Of course, as the dissent notes, the defendant did present some evidence of delivery of the deed, and the trial judge's finding that "no evidence was presented" was, therefore, inaccurate in a literal sense. However, a literal reading of the trial judge's finding is unjustified here because it is so obviously contradicted by the record. We logically read the trial judge's language as finding that no believable evidence of delivery was presented by the defendant. Such a reading not only is consistent with the evidence but also is necessary to the holding of the judge. Absent any delivery, the purported conveyance must fail. Our affirmance of the trial court's finding of no delivery renders a discussion of its finding of no consideration unnecessary.

■ Finally, John argues that the trial court erred in failing to award him his costs and attorney fees incurred in proving the genuineness of Nancy's signature on the quitclaim deed. After John had proved that Nancy had signed the deed, he applied to the trial court for his expenses under Rule 37(c) of the Utah Rules of Civil Procedure because, on a request for admissions, Nancy had previously denied that it was her signature on the deed. "It is clear that the sanctions of Rule 37(c) apply only to parties who unjustifiably fail to admit facts...." *Schmitt v. Billings,* Utah, 600 P.2d 516, 519 (1979). Based on the facts of the present case, we find no abuse of discretion by the trial court in determining that Nancy's denial was justifiable. We therefore affirm the trial court's ruling denying John his expenses and attorney fees.

Affirmed. No costs awarded.

HALL, C.J., and OAKS, J., concur.

HOWE, Justice (dissenting):

I dissent. The finding of fact on lack of delivery of the deed is not supported by the evidence. The trial court found "no evidence was presented by defendant as to the delivery" of the deed. That is not so. Both the defendant and his wife, who appears as the notary on the deed, testified that the plaintiff executed the deed when she came to their home on one occasion to pick up a payment of child support. After signing it, she left the deed with them. This certainly constituted evidence of delivery. It is inconsequential whether the notary signed her name and affixed her seal to the deed the same day that it was signed by the plaintiff, or whether that was done shortly afterwards. The notary testified that the plaintiff signed the deed in her presence either on the date it bears, May 30, 1975, or within a week of that date.

The majority opinion concludes that the plaintiff did not appear before the notary

and thus the acknowledgment on the deed was invalid; hence, there is no presumption of delivery. The difficulty with that conclusion is that the trial court found she executed the deed but it made no finding of fact respecting whether plaintiff appeared before the notary. Therefore, the majority opinion is unwarranted in holding that the acknowledgment was invalid.

The defendant produced testimony of three witnesses that plaintiff was present in his home on the occasion on which he claims she signed the deed. Two of those witnesses (defendant and his wife) testified that the plaintiff signed the deed in the presence of the notary. On the other hand, the plaintiff could not remember ever signing the deed and maintained that she must have done so unwittingly. The case should be remanded to the trial court to make an adequate and complete finding on this vital issue of whether she did in fact appear before the notary. If the plaintiff did appear, then the acknowledgment was proper and the deed was entitled to be recorded. As a recorded deed, delivery and consideration would be presumed. In that case, the burden is on the plaintiff to prove lack of delivery and lack of consideration—rather than the burden being placed on the defendant as the trial court apparently perceived it to be.

Just as delivery and consideration became issues during the trial, so did the issue of whether the plaintiff held the property in trust for the defendant. He testified that he conveyed his one-half interest in the property to the plaintiff to secrete it from loss to his creditors, and that plaintiff promised to convey it back to him when his financial condition improved. She did not really deny this but endeavored to relate her promise to reconvey the property to an oral promise made by the defendant to provide support for her children from her previous marriage. (In the divorce the defendant was given custody of the child of the parties and hence was not ordered to pay any child support for her). I would remand this case for findings of fact on whether there is a basis for imposing a constructive trust on the property in favor of the defendant. See Section 44, Restatement of Trusts 2d (1959); *Haws v. Jensen,* 116 Utah 212, 209 P.2d 229 (1949).

I dissent from the holding of the majority opinion that there was no abuse of discretion by the trial court in determining that the plaintiff's denial of her signature on the deed was justifiable. No explanation is given for that conclusion. I believe that it was an abuse of discretion because she readily admitted at trial that she had signed the deed. This was after the defendant had expended a considerable sum to employ a handwriting expert to disprove her earlier denial. She offered no explanation for that denial except that she could not remember signing it. However, she always agreed that the signature looked like hers.

STEWART, J., concurs in the dissenting opinion of HOWE, J.