ALLSTATE ENTERPRISES, INC., Plaintiff,

v.

Glenn William HERIFORD, Heritage Motors, Inc., and Western Surety Company, Defendants.

VALLEY BANK & TRUST COMPANY, Plaintiff,

v.

Robert L. GRANT, Heritage Motors, Inc., and Western Surety Company, Defendants.

WESTERN SURETY COMPANY, Third–Party Plaintiff and Respondent,

v.

Glenn William HERIFORD, Jan L. Heriford, J.F. Ollivier and Linda S. Ollivier, Third–Party Defendants and Appellant.

Joseph F. OLLIVIER, Cross Plaintiff,

v.

Glenn William HERIFORD, Cross Defendant.

Nos. 870521–CA and 880050–CA.

Court of Appeals of Utah.

April 18, 1989.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

Allen K. Young, Douglas Baxter (Argued), Young & Kester, Springville, for appellant Ollivier.

Glen J. Ellis, Provo, for G. William Heriford.

Terry M. Plant, John N. Braithwaite (Argued), Hanson, Dunn, Epperson & Smith, Salt Lake City, for Western Sur.

Don R. Petersen, Kevin J. Sutterfield, Howard, Lewis & Petersen, Provo, for Allstate Enterprises.

Before DAVIDSON, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

Allstate Enterprises, Inc. (Allstate), initiated this action against Glenn Heriford (Heriford), Heritage Motors, Inc. (Heritage Motors) and Western Surety Co. (Western Surety) for default in payment of a loan Allstate made to Heriford to purchase a van which Heritage Motors subsequently sold. Western Surety, which had issued a bond to Heritage Motors, filed a third-party complaint against Joseph F. Ollivier and others, claiming Ollivier was liable as an indemnitor on the Western Surety bond. Allstate's claim against Western Surety was settled. A trial was then held on Western Surety's indemnification claim against Ollivier. The trial court entered judgment for Western Surety. On appeal, Ollivier seeks reversal of the judgment, claiming the indemnification contract should have terminated when he severed his business relations with Heritage Motors.

On December 7, 1978, Western Surety issued a motor vehicle dealer's bond to Heritage Motors, as required by the Motor Vehicle Bond Act, Utah Code Ann.

§ 41-3-16 (1978). Ollivier was a shareholder in Heritage Motors and signed the bond application, which included indemnification provisions, as one of four indemnitors. The indemnity agreement Ollivier signed lacked any terms governing the duration of the agreement or methods of revocation or termination.

Approximately four years after signing the bond application, Ollivier severed his business relationship with Heritage Motors. He did not, however, notify Western Surety of his severance with Heritage Motors nor of his intent to no longer act as an indemnitor. Two years after Ollivier left the business, Allstate brought this action against Heriford, Heritage Motors and Western Surety to recover the balance of its loan to Heriford. Western Surety settled with Allstate and then pursued its third-party complaint against Ollivier as indemnitor. The trial court found Ollivier liable as an indemnitor on the bond.

Ollivier contends on appeal that the trial court erred in finding that the indemnity agreement was operative so long as the principal, Heritage Motors, paid annual premiums on the bond, and hence, Ollivier was liable as an indemnitor until he gave notice of his intent to revoke the agreement. He asserts that because the contract did not contain terms governing the duration of the agreement, the court should have construed the contract to terminate when he severed his business relationship with Heritage Motors. Ollivier also argues that the indemnity agreement should be construed against the drafter, Western Surety.

We first examine whether the trial court erred in concluding that Ollivier was liable as an indemnitor under the bond application agreement. Interpretation of a contract may either be a question of law, determined by the words of the agreement, or a question of fact, determined by extrinsic evidence of intent. *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985); *Seashores Inc. v. Hancey*, 738 P.2d 645, 647 (Utah Ct.App.1987). If the contract is ambiguous and the trial court makes findings regarding the intent of the parties, we will not disturb those findings unless they are clearly erroneous. *Id.; see also State v. Walker*, 743 P.2d 191, 193 (Utah 1987). If the contract is interpreted as a matter of law, the trial court's determination is accorded no particular deference. *Seashores*, 738 P.2d at 647.

In this case, the contract does not contain any terms with respect to duration or methods for withdrawal by an indemnitor. The indemnity provisions of the bond application read in part as follows:

> The undersigned applicant and indemnitors hereby request Western Surety Company (the Company) to become surety for and furnish the above bond and such other bonds as may now or hereafter be required by or on behalf of the applicant ... in case [the Company] does act as surety [it] shall have the right to withdraw or cancel same whenever it shall see fit....

Courts imply two varieties of contract terms, implied-in-law and implied-in-fact terms. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025, 1036 (1985); 1 *Corbin on Contracts* § 17 at 38 (1963). An implied-in-fact term "is merely a tacit promise, one that is inferred in whole or in part from expressions other than words on the part of the promisor." 1 *Corbin on Contracts* § 17 at 38 (1963). A term is implied-in-law where the contract is silent. *Wagenseller*, 710 P.2d at 1036. An implied-in-law term will be imposed even though the parties may not have intended it and binds the parties to a legally enforceable duty. *Id.;* 1 *Corbin on Contracts* § 17 at 38 (1963). However, the court can only supply reasonable terms to supplement a contract which is silent. *State v. Fairbanks N. Star Borough School Dist.*, 621 P.2d 1329, 1332 (Alaska 1981).

In this case, the contract is silent as to its duration and no evidence was presented to demonstrate that a tacit promise existed between Western Surety and Ollivier as to the duration of the agreement. Therefore, we must determine if an implied-in-law term regarding the duration of the indemnity agreement can be applied.

In *Insurance Company of North America v. Lanseair Travel Agency, Inc.*, 617 P.2d 366 (Utah 1980), the Utah Supreme Court inserted a term regarding duration in an indemnity agreement. In *Lanseair*, the Insurance Company of North America (INA) issued a bond in favor of Lanseair, a Utah corporation. Lanseair's president, Nielsen, agreed in writing to indemnify INA. Claims were successfully brought against INA under the bond, and INA sued Nielsen based on the indemnity agreement. The court rejected Nielsen's argument that he should be released from liability, because there was no evidence INA had ever received notice of revocation from Nielsen, and stated:

> While it is generally held that either party to an indemnity agreement may revoke it at will, it has been held by this Court that such revocation must be with notice to the other party which is clear and unequivocal. Further, it is fair and reasonable that the indemnitor can absolve himself from liability only after giving the surety reasonable time to secure release from its own liability.

*Id.* at 368 (footnotes omitted).

According to *Lanseair*, an indemnity agreement which is silent as to duration can only be revoked if notice to the other party is clear and unequivocal. In addition, the indemnitor can relieve himself from liability only after giving the surety reasonable time to secure a release from its own liability. Moreover, "[w]here courts have to choose between conflicting interpretations in the agreements under review, an interpretation which will bring about an equitable result will be preferred over a harsh or inequitable one." *First Sec. Bank of Utah v. Maxwell*, 659 P.2d 1078, 1081 (Utah 1983).

Applying *Lanseair* to the facts of this case, we conclude that the indemnity agreement Ollivier entered into with Western Surety could be revoked at the will of either party but the revocation must include notice to the other party which is clear and unequivocal. In this case, Ollivier conceded that he did not notify Western Surety of his desire to no longer be bound as an indemnitor. In addition, there was no evidence suggesting Western Surety knew of Ollivier's withdrawal from Heritage Motors nor his intent to no longer be an indemnitor. Therefore, in light of this implied-in-law term regarding the duration of the contract, we hold that Ollivier was bound by the agreement because he failed to revoke the agreement with timely notice to Western Surety which was clear and unequivocal.

■ Ollivier also contends that the agreement should be construed against the drafter of the agreement, Western Surety. If a contract is ambiguous, the court will construe it against the drafter only after concluding that extrinsic evidence does not reveal the intent of the parties and uncertainty remains. *Wilburn v. Interstate Elec.*, 748 P.2d 582, 585 (Utah Ct.App. 1988), *cert. granted*, 765 P.2d 1277 (Utah 1988). Because we have resolved the question of how the contract may be terminated by application of an implied-in-law term, there is no ambiguity and the doctrine of construing against the drafter has no application.

The decision of the trial court is affirmed.

DAVIDSON and ORME, JJ., concur.